May it please the court. My name is Maurice James Salem. I represent the appellant in this case. Your Honor, on May 19, 2008, my client went to a closing where he purchased a hotel in Davenport, Indiana. At that closing, he put it in an escrow for the purpose of doing repairs on the hotel. Now in the closing documents, it shows in the accounting that $700,000 was put in escrow for the purpose of repairs in the hotel. I understood there was no escrow agreement. Yes, correct. There was no escrow agreement. The bank, Mutual Bank, that did this, had severe problems at that time. They didn't put together an escrow agreement and there's no dispute on that. But also, Your Honor, there's also no dispute that the bank held $700,000 in escrow that belongs to my client. They're not disputing that. When Mutual Bank failed, FDIC stepped in and put United Central Bank in and receivership, United Central Bank said to my client, no, we're not going to give you your escrow money because Congress enacted a statute, the Financial Institution Reform, Recovery, and Enforcement Act, FRIA, that says we don't have to give you back your escrow. So we're keeping it. That's their argument and that's the argument they used in the lower court. Now I submit to you there are two reasons why that argument should fail and you should grant this appeal. The first, Congress did not intend to create this statute to dispossess a party of their money. The intent of Congress here was really very reasonable. It was simply to prevent the third party from taking advantage of a failed bank where the third party would step in and say, we have this type of interest. The terms of the loan were favorable to that third party. Now that seems reasonable and Congress said, anytime there's a failed bank, you want to enforce an agreement, better be in writing. Now the lower court used the O'Neill case to grant the motion to dismiss the second amended counterclaim, but here's the distinction with the O'Neill case. In the O'Neill case, there was a reference to a note and that note did not apply because the note didn't exist. You need it in writing. But here's the difference, Your Honor, and this is critical. This goes along with the FREA Act. That note, Your Honors, contained interest rates. It contained a duration of the loan. It contained typical terms that are associated with a loan. And in that obviously make up their own terms and say, well, this is the interest rates, this is this. And this was the intent of Congress in creating FREA so that third parties don't take advantage of a failed bank. But Your Honors, this is not the case here. The case here is there's an escrow account. That money belongs to my client. The title of ownership of that money has always been with my client from the date of the closing. That's not in dispute. So with respect to my first point, this is the one of the reasons, one of the two reasons, why that argument should fail. The other one is this, and I raised this argument in the district court, which failed in the district court, but I really think this is the strongest argument. And that is that since the title of ownership of that property, that money, belonged to my client, okay, it never transferred to the United Central Bank. When United Central Bank said we're not going to give you that money, at that point I contend that that was a conversion. Where did you tell the district court that? Excuse me? Where did you tell that to the district court? Your Honor, if you could look at my reply brief. In the reply brief, I make that argument, Your Honor. If you'd like me to read the paragraph at the end, as you can see, they wrongfully took it via conversion, Your Honor. I've read it and what I see is a five-word phrase, rather than a developed legal argument. In the lower court, Your Honor, that may be true. In other words, but let me emphasize here, that when you plead a claim, the facts that are pleaded really constitutes the claim. I understand that point, and I have said, and on behalf of the court, and everybody else has said, you don't have to plead legal theories. But in response to a 12b6 motion, you have to give the district court your theory. And I don't see a conversion theory here presented to the district court. Well, Your Honor, other than the argument that I make here, which I respectfully disagree with you, I think the fact that I raise that there's a conversion there should, at the very least, require the dismissal without prejudice, allowing me to amend the pleading. Since it's there and it uses the word conversion, I would say that the argument is raised there. But again, the facts that constitutes conversion were pleaded, Your Honor. Now, that's the second reason. But the first reason, Judge Hamilton, if you recall a few weeks ago, I was in front of you and Judge Easterbrook said that statutes were like metaphors. Do you recall that? In Lawdus v. Gersick, Judge Easterbrook said statutes were like, aren't statutes like metaphors? You remember that? Is that the bankruptcy case? Yes, the bankruptcy case. Vaguely, yes. I was shocked when I heard him say that. So I agree with him. Statutes are like metaphors. And in this case, the Congress FREA Act is a metaphor. So, I mean, no reasonable person will believe that Congress intended this statute to prevent a bank from giving back someone their money. So even, Judge Hamilton, if you believe there was no conversion argument raised in the district court, that statute, that act that Congress enacted does not apply here. It certainly applies with the O'Neill case when you have a loan with terms of things of that nature. But here it doesn't, the title ownership. And this is the simplest case I've ever appealed to a U.S. Court of Appeals. I really think that this should be reversed. And I've always been sincere. I would never bring a case to you that I didn't strongly believe in. And I strongly believe that statutes are metaphors now. I agree with Judge Easterbrook. And I ask that this court reverse the lower court. And unless there's any other questions, I'd like to reverse the balance of my time. What do you think it means to say that statutes are metaphors? Well, I think that you should not interpret them strictly, literally. That there should be more than strict literal interpretation. You think that's what Judge Easterbrook said? It's in the oral argument. He said, I was shocked. I mean, if I had, had I said that in the past... I'm shocked too. Excuse me, Your Honor? I said I'm scalded by him. All right. Thank you, Your Honors. Mr. Abrams. Do not speak in metaphors, please. I will do my best, Your Honor. Good morning, Your Honor. Your Honors, if it may please the court. The crux of this appeal is the contention that the district court somehow erred in dismissing the second amended counterclaim by not, on its own initiative, and without any prompting from appellants, recognized that the appellant stated a plausible claim for conversion. This is the crux of the brief to the court. Virtually the entire brief addressed this one point. And I stress own initiative because appellants never raised this argument to the district court in connection with briefing on the second amended counterclaim, even though they had multiple opportunities to do so. They filed the claim as a breach of contract claim. Appellee moved to dismiss under 12b-6 as a breach of contract claim as the only legal theory done before the court. And in response to that motion to dismiss, appellants could and should have raised every possible legal theory that supported a claim against appellee. Instead, appellants solely argued that they could recover against appellee for breach of contract. Generally the crux of their brief, brief reimbursement statement attached to the second amended counterclaim constituted an agreement that would meet the requirements of FERIA and the Illinois Credit Agreements Act, and otherwise evidence the escrow agreement. Now here on appeal, they argue that their claim really all along was one for conversion. But for the authority cited in our briefs, having not raised the conversion theory to district court, as to the second amended counterclaim, they bear in mind, your honors, this was the third counterclaim that was filed in response by appellants, certain of appellants, to a multi-loan, multi-property, commercial foreclosure, and breach of guarantee complaint after two prior counterclaims were dismissed by the district court on motions to dismiss. The prior counterclaim, the first amended counterclaim, raised a host of claims and brought many legal theories, among those conversion against appellee and other third-party defendants that were subsequently dismissed. The district court granted the Rule 12 motion to dismiss by appellee, generally based on the fact that much of the allegations were an attempt to hold United Central Bank, the successor institution, or the institution that acquired the underlying loans, as liable for the conduct of mutual bank. The district court dismissed those claims for lack of jurisdiction under FERIA, but gave defendants, then one last opportunity to bring a second amended counterclaim limited to this one issue as the construction escrow, and also admonished appellants that they should make specific allegations, and they should find a specific legal theory that imposed a duty on appellee, the successor bank, as the alleged escrow. What do the bank records show about this account? The bank records show, and actually, it's not only the bank records shown, there was, on the offensive case, there was a finding of liability in an amount in excess of $700,000. Against Davenport? Excuse me? Against Davenport. Against Pratchett. The claims against Pratchett on the guarantee, but in anticipation of this were ever to be, if the bank were ever have to respond to a third amended counterclaim, or this counterclaim, it would raise a defense to $700,000 on this very loan. I'd like to make one point clear. Appellant refers to the $700,000 as his money, or Davenport's money. The disbursement statement that is attached to the second amended counterclaim shows that the $700,000 was proceeds of the loan that was advanced, and for which the bank already has a finding of liability for the full amount. So I may argue, and it's alleged his money, but it wasn't as if there were $700,000 deposited. This was the proceeds of the loan, which is pretty clear from the disbursement statement. Does the FERIA writing requirement apply to set-off defenses? Does the FERIA? The relevant language is that the corporation or the successor institution can't have its interest affected by any agreement that's not in writing, etc. Diminished or defeated? It's an interest, so the argument would be, even on a conversion theory, if their only basis to the funds is based on some agreement to escrow it, even as to defending a conversion claim, that would affect the interest of the successor bank in the asset, that being the loan. Another point to raise, there's often references in the argument that this is no dispute, no dispute, and we're on here on, as this panel knows, on a motion to dismiss. I know this was confused a bit in the briefs, relevant references to summary judgment, but this is a motion to dismiss. We haven't, the bank hasn't had an opportunity to dispute anything because we're here on the pleadings. I'd also address the, I just raised the point as to the dispossession of funds, that this was proceeds of the loan, for which there's been already a countervailing filing, is the amount in excess and the amount demanded. And also the O'Neill case was rightly cited by the district court. I would rather just rest on the briefs as to that point and focus on other arguments, an oral argument, but I don't think appellants adequately described that case, and I think the district court understood it correctly. The other argument is that the appellants raised the conversion argument below. That was not, the brief that was provided by appellants, in connection with opposing a motion for summary judgment, while the first amended counterclaim was pending, that first amended counterclaim had a conversion claim. We're here on the briefing, the order that was appealed was the granting of the motion to dismiss the second amended counterclaim. So we're limited to just what's alleged in the second amended counterclaim. Conversion was not raised in any way as to briefing on the second amended counterclaim. I'd also argue as to the request for dismissal without prejudice that was not requested in the brief, that was not raised in the initial brief, that was raised on reply. But I think Judge, the district court, in the end of her opinion, explains why the district court is not going to, why the dismissal would be with prejudice, and cites two Seventh Circuit cases that are very applicable here, and why this court should not, should recognize the discretion of the district court, particularly in light of the prior opinion, that gave the district, the appellants one last chance to bring a legal, a viable legal theory as to the second, as the construction has grown in the second amended counterclaim. Can I just ask you one, I'm sorry, but precautionary question. Okay. This case is totally closed in the district court, right? Totally. Foreclosures, sales, judgments. Okay, thank you. Thank you, Judge. All right. Thank you. Thank you, Mr. Abrams. Thank you, Mr. Salem. Your Honor, counsel reminds me that the first amended counterclaim did have a conversion, and when the second one came in, for some reason, that was negligently left out. But the argument was made, the word conversion was used, and I believe it satisfies the case law that counsel represented. Also, with respect to setoffs, at this point, I don't think we should address that issue, because once there's the liability of $700,000 against the bank, the bank becomes a creditor. There are other creditors with higher priorities, such as who've done repair, paid equipment, and so, but that's an issue. Should you send it back to the district court, which I hope you do, then we'll deal with that then. Thank you, Your Honors. Thank you, Mr. Salem. Thanks to all counsel. The case is taken under advisement of the Court of Standing Recess.